Honorable John C. Coughenour

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEN RAY CLARK and JOSH ASSING,

                        Plaintiffs,

vs.

PAYLESS SHOESOURCE, INC.,
COLLECTIVE BRANDS, INC., and
SMARTREPLY, INC.,

                        Defendants.

CLASS ACTION

Case No. 2:09-cv-00915 JCC

OPPOSITION OF PLAINTIFFS TO
DEFENDANTS' MOTION TO DISMISS
STATE LAW CLAIMS

Note on Motion Calendar: June 11, 2010

WILLIAMSON
& WILLIAMS | 187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

## I. INTRODUCTION AND SUMMARY

Defendants Payless Shoesource, Inc., Collective Brands, Inc. and SmartReply, Inc. seek dismissal of the state law claims of Plaintiffs Ken Ray Clark and Josh Assing. Defendants admit they made or caused to be made pre-recorded solicitation calls by automatic dialing and announcing devices (ADADs) to Plaintiffs' residential telephone numbers, but argue that the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") preempts Washington's ADAD statute, RCW 80.36.400, (hereafter "WADAD") which prohibits all ADADs made for commercial solicitation.

Defendants mistakenly urge this Court to ignore the strong presumption against preemption and, instead, to find express and implied conflict preemption. They ignore the numerous federal circuit court decisions rejecting their preemption argument, give short shrift to recent published decisions by Judges James L. Robart and Robert S. Lasnik that reject their arguments[1] and only rely on one unreported, unappealed California trial court case and the oral, unpublished opinion of Judge Thomas Zilly in a case involving different facts and affirmed by the 9th Circuit without consideration of Judge Zilly's preemption ruling. Defendants disregard Congress's respect for the states' authority over areas of their traditional police powers, particularly consumer protection and privacy laws, and they misconstrue the TCPA's Savings Clause, which expressly declares that state laws such as Washington's are not preempted. The motion should be denied.

---

[1] See *Palmer v. Sprint Nextel Corp.*, 674 F. Supp.2d 1224 (W.D.Wash 2009)(Judge Robart) and *Hovila v. Tween Brands, Inc.*, 2010 WL 143347 (W.D.Wash. April 2, 2010)(Judge Lasnik).



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

## II.   FACTS

As stated in Plaintiffs' Amended Complaint for Damages, Injunctive and Declaratory Relief (Dkt. No. 17) which added Defendant SmartReply, Inc. as a Defendant on April 27, 2010, Plaintiff Josh Assing resides on Anderson Island, Pierce County, Washington, and Plaintiff Ken Ray Clark resides in Kent, King County, Washington.  In 2008, both Plaintiffs received telephone calls on their residential telephones, which calls were placed by Defendant SmartReply, Inc., a voice broadcasting company employed by Defendants Payless ShoeSource (Payless) and Collective Brands, Inc. (Dkt. No. 17, ¶1.4-1.7; ¶2.1-2.2).  As further alleged by Plaintiffs, the calls consisted of a pre-recorded message delivered by an automatic dialing and announcing device ("ADAD").   The pre-recorded message identified itself as being from Defendant Payless, and was for the purpose of commercial solicitation, soliciting Plaintiffs to purchase merchandise. Dkt. No. 17, ¶2.2-2.3.   As further alleged by Plaintiffs, Defendants placed hundreds or more substantially similar telephone calls to the telephones of persons in Washington State, including persons in King County, and to persons in other states. Dkt. No. 17, ¶2.3.

In the Statement of Facts of their Motion to Dismiss Plaintiffs' State Law Claims, Defendants state in part: "Although SmartReply periodically placed telephone calls to Payless customers, it did so **only** to customers who had voluntarily provided their telephone numbers to Payless," Motion, 2 (emphasis added) In actuality, Defendants Payless and Collective Brands' Answer states, in ¶2.3, "Defendants admit that they periodically place calls to customers who have voluntarily provided their telephone numbers to them." Defendants do not only call customers as stated in their Motion.  Indeed, as admitted by Defendant Payless in its Responses

WILLIAMSON
& WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

to Plaintiff's First Requests for Admissions (Williamson Decl, Exh.1), neither Plaintiff Josh Assing nor Plaintiff Ken Ray Clark provided their home telephone numbers to Payless. In response to Request for Admission No. 3 asking Payless to admit that it does not know the identify of the person who provided it with the telephone number 2536317010 [Mr. Clark's home number], Payless responded "Admitted." In response to Request for Admission No. 9 seeking Payless's admission that it never obtained Plaintiff Clark's prior express consent to make solicitation calls to his residence utilizing an ADAD, Payless responded, in pertinent part: "In the case of Mr. Clark, Payless admits that it has no evidence to prove that Mr. Clark provided his number to Payless. After reasonable inquiry, Payless can only conclude that Mr. Clark's number was provided to Payless by someone other than Mr. Clark, or an error was made by the sales associate who input the number..." In addition, in response to Request for Admission No. 23, which is identical to No. 9 except as to Plaintiff Josh Assing, Payless responded in part as follows: "Payless admits that Josh Assing did not provide consent to receive calls...." [2]

### III. AUTHORITY AND ANALYSIS

#### A. DEFENDANTS HAVE NOT MET THEIR BURDEN ON THEIR AFFIRMATIVE DEFENSE

---

[2] This case was filed in King County Superior Court on June 2, 2009, removed to federal court on July 2, 2009, and Defendants Payless and Collective Brands filed their Answer, which asserts a number of affirmative defenses, including failure to state a claim upon which relief may be granted, on July 22, 2009. The case has been at issue for almost a year, and unlike most cases in which the defendant files a motion to dismiss, considerable discovery has been conducted, including the exchange of written discovery, the depositions of both Plaintiffs and Mr. Assing's wife, and, as indicated, the promulgation of Requests for Admission to Payless, and Plaintiffs' receipt of its responses. Defendants' Motion assumes that only the allegations of the pleadings are relevant to the issues to be decided on this motion, but that cannot be the case where, as here, a party (Payless) has admitted certain facts that are apparently at odds with allegations in the Answer it filed almost a year ago.

OPPOSITION OF PLAINTIFFS TO DEFENDANTS'
MOTION TO DISMISS STATE LAW CLAIMS- 3
(No. 2:09-cv-00915-JCC)


WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Defendants' arguments are based on their affirmative defense of preemption, which fails as a matter of law. Federal preemption, rooted in the Supremacy Clause of the United States Constitution,[3] is an affirmative defense upon which the Defendant bears the burden of proof. *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.,* 510 F.3d 77, 102 (1st Cir.2007), *cert. denied,* 129 S.Ct. 58, 172 L.Ed.2d 25 (2008); *see also Wyeth v. Levine,* 129 S.Ct. 1187, 1193, 173 L.Ed.2d 51 (2009).

B.     THE STATE LAW CLAIM OF PLAINTIFFS IS NOT PREEMPTED

1. The TCPA Saves Consumer Protection/Privacy For The States Under Their Traditional Police Powers

When Congress adopted the TCPA in 1991, amending the Federal Communications Act, 47 U.S.C. § 151, *et seq.* (FCA), it confirmed or "saved" certain state rights under the TCPA "Savings Clause," 47 U.S.C. § 227(e)(1),[4] allowing them to continue to exercise traditional police powers. Consumer protection is a critical and long-standing state police power. Consumer protection is based on common law tort law (fraud, misrepresentation), as well as criminal law. State telemarketing laws are general civil or criminal statutes enacted pursuant to the states' general police powers. *See* 47 U.S.C. § 227(f) (6) (nothing in the TCPA prohibits state official from proceeding in state court regarding alleged violation of state civil or criminal statutes). *See Spreitsma v. Mercury Marine,* 537 U.S. 51, 63, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002) (a "saving clause assumes that there are some significant number of common-law liability cases to save" and the "language of the preemption provision permits a

---

[3] U.S. Const., art. VI, cl. 2; *Barrientos v. 1801-1825 Morton LLC,* 583 F.3d 1197 (9th Cir 2009).

[4] 47 U.S.C. § 227(e)(1) provides: "(e) Effect on State Law. (1) State law not preempted. Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any state law that imposes more restrictive intrastate requirements or regulations on, or which prohibits–... (B) the use of automatic telephone dialing systems".

**WILLIAMSON & WILLIAMS**
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

narrow reading that excludes common-law actions"; quoting *Geier v. American Honda Motor Co.*, 529 U.S. 861, 868, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000)). As a result, states may impose more restrictive intrastate requirements or regulations on certain practices; or they may prohibit certain practices outright, whether the calls are inter- or intrastate in origin.[5]

The Washington Legislature decided, within its police powers, to prohibit pre-recorded solicitation calls to all telephone customers within the State:

> No person may use an automatic dialing and announcing device for purposes of commercial solicitation. This section applies to all commercial solicitation intended to be received by telephone customers within the state.[6]

RCW 80.36.400(2).

RCW 80.36.400 is a consumer protection statute defending consumers' privacy and preventing the burdensome and annoying consequences of pre-recorded calls. It is squarely within the police powers of Washington State.

### 2. The Legislative History Of The TCPA Shows That Privacy Was Congress's Main Concern, And That Federal Law Was To Supplement State Law

Defendants contend that Congress's purpose in enacting the TCPA was to facilitate interstate commerce because states could not regulate interstate calls, Motion, 6-7, and to promote a uniform regulatory scheme, Motion, 7-8. In fact, Congress's foremost, overarching concern was to protect individuals' privacy from invasion by ever-increasing aggressive

---

[5] Sandi Zellmer, *When Congress Goes Unheard:  Savings Clauses' Rocky Judicial Reception,* in William W. Buzbee, *Preemption Choice: The Theory, Law, and Reality of Federalism's Core Question,* p. 146 (Cambridge Univ. Press 2009). "Where Congress includes a savings clause, it recognizes the need either to fill a regulatory void or to enhance protection for affected communities through complementary federal and state authorities."

[6] The Legislature based this statute, in part, on the finding that "the use of automatic dialing and announcing devices for purposes of commercial solicitation: (1) deprives consumers of the opportunity to immediately question a seller about the veracity of their claims; (2) subjects consumers to unwarranted invasions of their privacy; and (3) encourages inefficient and potentially harmful use of the telephone network. The legislature further finds that it is in the public interest to prohibit the use of automatic dialing and announcing devices for purposes of commercial solicitation." Laws of Wash., 1986 c 281 § 1.



WILLIAMSON
& WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamlaw.com

telemarketing tactics, not to give telemarketers carte blanche to pursue their commercial ends by placing their calls from one state to another.[7] Nowhere does Congress recognize the need to create "uniform national standards." The word "uniform" does not appear either in the congressional findings or the text of the TCPA. The word "national" appears only as related to the permission granted to the Commission to establish a national Do-Not-Call Registry. In only one of 15 findings does Congress mention the need to "permit legitimate telemarketing practices." Pub.L.No. 102-243, §2(9). In contrast, Congress emphasizes the need to protect consumers' right to privacy in nine of the findings. *Id.* at § 2(5)-(7), (9))-(14). The right to privacy should not be limited by unilateral action of the FCC, an unelected body.[8] *See Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 450-51 (2005) (rejecting Dow's overstatement of "the degree of uniformity and centralization that characterizes FIFRA"; even if a preemption proponent offers a plausible alternative reading for preemption, the court has "a duty to accept

---

7 Congressional findings in the TCPA emphasize the goal of protecting consumers' privacy:

(5) Unrestricted telemarketing ... can be an intrusive **invasion of privacy** ...

(7) Over half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations; therefore, Federal law is needed to control residential telemarketing practices....

(9) **Individuals' privacy rights**, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that **protects the privacy of individuals** and permits legitimate telemarketing practices.

(10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or pre-recorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an **invasion of privacy**....

(12) Banning such automated or pre-recorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and **privacy invasion.**

Pub L. No. 102-243, § 2, 105 Stat. 2394 (emphasis added).

[8]More than 25 states had anti-telemarketing laws at the time the TCPA was enacted. TCPA §2(7). Congress, being aware of the existence of these state laws, *see* §2(7), would have preempted such laws if that had been its intent. Finding §2(7) contemplates that federal law will work alongside state law to make the state laws more meaningful and effective. *Van Bergen v. Minnesota,* 59 F.3d 1541, 1548 (8th Cir. 1995)("[t]his finding suggests that the TCPA was intended not to supplant state law, but to provide interstitial law preventing evasion of state law by calling across state lines").



WILLIAMSON
& WILLIAMS

187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

the reading that disfavors preemption." *Id.* at 449. *See also Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008).[9]

As discussed above, the states regulate unfair business practices and protect citizens' rights. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996); *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424, 445 (1963) (Brennan, J., concurring; consumer protection legislation "embodies a traditional state interest of the sort which our decisions have consistently respected"). This Court has recognized that 'the protection of ... privacy is a substantial state interest.' A state may legislate to protect privacy and 'avoid intrusions.'" *Verizon Northwest, Inc. v. Showalter*, 282 F.Supp.2d 1187, 1191 (W.D.Wash. 2003); *Spafford v. Echostar Communications Corp.*, 448 F.Supp.2d 1220, 1224 (W.D. Wash. 2006) ("Washington has a significant interest, at a minimum, in protecting privacy in the home and at work", established in the case law and other ADAD statutes).[10] The FCC itself observed that "states have a long history of regulating telemarketing practices." FCC's 2003 Order, *In re Rules and Regs. Implementing the TCPA of 1991, Report and Order* 18 FCCR 14014 (2003 Order), ¶75. State telephone privacy laws are just one species of consumer protection laws,

---

[9] "[S]tates have historically enforced their consumer protection laws within, as well as across, state lines to prosecute a person who has employed unfair and deceptive practices against their citizens. The states have used their consumer protection laws to prosecute thousands of out-of-state companies that have contacted their residents over the telephone, through the mails, through television and other mass media, including through the Internet. States similarly have enforced their own No Call database laws against telemarketers across the country, irrespective of whether the call was "intra-state" or "interstate" in nature. .... [M]any states have taken legal action against telemarketers who violate their laws by calling into their states. No such action has been defeated by the baseless argument that a state cannot protect its citizens from receiving solicitations they have stated they do not want." NAAG comment, FTC File No. R411001, at 9-10 http://www.ftc.gov/os/comments/dncpapercomments/04/naag.pdf)(footnotes omitted). Congress was well aware of this long-standing activity and wished to supplement it rather than assume the overwhelming burden.

[10] The Washington Supreme Court has steadfastly enforced Washington citizens' right to privacy, through consumer protection and other laws. *McKee v. AT & T Corp.*, 164 Wn.2d 372, 391, 392-94, 191 P.3d 845 (2008)(rejecting contention that the FCA preempted Washington Consumer Protection Law); *Hue v. Farmboy Spray Co., Inc.*, 127 Wn.2d 67, 78-79, 896 P.2d 682 (1995)("Congress is presumed to respect our system of 'dual governance.' ... The presumption against preemption is "even stronger with state regulation regarding matters of health and safety," in which states have traditionally exercised their sovereignty").

WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

designed to protect consumers from harassment.[11] The purpose of Washington's law is entirely consistent with the TCPA's goal to deter the invasion of privacy caused by unsolicited pre-recorded messages.

Defendants reference the FCC's 2003 Order (Motion,7) which, under ¶¶ 83, 84, states that the FCC would **consider** conflict preemption arguments "case-by-case", refraining from making any conclusion:

> We will consider any alleged conflicts between state and federal requirements and the need for preemption on a case-by-case basis. Accordingly, any party that believes a state law is inconsistent with section 227 or our rules may seek a declaratory ruling from the Commission.

The FCC **still** has reached no conclusion on preemption, despite many unresolved, long-pending petitions.[12] The National Association of Attorneys General (NAAG) (including Washington's Rob McKenna) expressed surprise at the telemarketers' petition for exclusive FCC jurisdiction over interstate telemarketing:

> The breadth of this sweeping assertion must surely be startling to the Commission .... It is certainly startling to the States, who would find their traditional abilities to combat consumer fraud and harassment substantially curtailed if the Commission were to accept the ACS Coalition's position.
> In short, even after the Communications Act of 1934, everyone has understood that states can enforce their consumer protection laws where the offense is committed by way of an interstate telephone call.... **If firms could simply avoid state do-not-call**

---

11Federal consumer protection and privacy laws, as a general matter, operate as regulatory baselines, not bars to states' enactment and enforcement of stronger state statutes. The Electronic Communications Privacy Act, 18 U.S.C. § 2701(f); the Right to Financial Privacy Act, 12 U.S.C. § 3401; the Cable Communications Privacy Act, 47 U.S.C. § 551(g);  the Video Privacy Protection Act, 18 U.S.C. § 2710(f); the Employee Polygraph Protection Act, 29 U.S.C. § 2009; the Driver's Privacy Protection Act, 18 U.S.C. § 2721; the Health Insurance Portability and Accountability Act, 29 U.S.C. § 1191; the Gramm-Leach-Bliley Act, 15 U.S.C. § 6701; and portions of the Fair Credit Reporting Act, 15 U.S.C. § 1681t; all allow states to craft privacy protections that exceed federal law. Business has continued to flourish in such states.

12http://fjallfoss.fcc.gov/cgi-bin/websql/prod/ecfs/comsrch_v2.hts?ws_mode=retrieve_list&id_proceeding=02-278&excludeInformal=Y&start=1&end=100&first_time=N. The 2,650 persons or entities submitting public comments to petitions in the FCC's Docket No. 02-278 include state attorneys general, state utility commissions, consumer advocacy organizations, AARP, and many individuals.

---



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

**laws by conducting their business over interstate telephone lines, they could similarly avoid enforcement of all state consumer protection laws.**

NAAG Comment (7-29-05) at 1 (Williamson Decl. Exh. 2, emphasis added). The NAAG's tracking of enforcement actions by states against telemarketers on the apparent basis of interstate telephone calls, representing the "tip of the iceberg" from 1997-2005, is a testament to the fact that harm occurring to a state's citizens by way of an interstate telephone call is not the province of the FCC".[13]

*See Wyeth v. Levine*, 129 S.Ct. 1187, 1200 (2009);[14] *see also* NAAG Comments and Recommendations, CG Docket No. 02-278, Dec. 9, 2002 at 10, 12 & n.34 (out of "more than 300 enforcement actions … against telemarketers, with nearly half of this number involving telemarketing companies calling from across state lines", no "action has been defeated by the argument that a state cannot protect its residents from receiving solicitations they have stated they do not want"); (Williamson Decl. Exh. 4) Comments of AARP, (Williamson Decl. Exh.5)(preemption would leave consumers vulnerable (especially the elderly who are most vulnerable to telemarketing; Commission could not meet the burden of full responsibility for protecting consumers nationwide).

Moreover, the Attorneys General observed that Congress rejected a preemption provision in an earlier TCPA version, Sen. Bill 1410, which stated, "This section preempts any provision[s] of State law concerning interstate communications that are inconsistent with the interstate communications provisions of this section."[15] 137 Cong. Rec. S16200-04 (daily ed.

---

13Excerpts of Exhibit A to the NAAG Comment summarizing Washington actions are attached to the Williamson Decl. as Exh. 3.

[14] "If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express preemption provision at some point during the FDCA's 70-year history. … Its silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness."

[15] Consistent with their position, in June and July, 2009, the Attorneys General of 46 states including Washington entered in to an Assurance of Voluntary Compliance with Dish Network, L.L.C. (Dish) in which Dish agreed,

OPPOSITION OF PLAINTIFFS TO DEFENDANTS'
MOTION TO DISMISS STATE LAW CLAIMS- 9
(No. 2:09-cv-00915-JCC)

**WILLIAMSON & WILLIAMS**  187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Nov. 7, 1991), 1991 WL 229524. When a proposal is deleted before passage, the congressional shift "militates against a judgment that Congress intended a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200 (1974). Veronica Judy, *Are States Like Kentucky Dialing The Wrong Number Enacting Legislation That Regulates Interstate Telemarketing Calls?,* 41 Brandeis L.J. 681, 691 (2003). *See also I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 442-43 (1987).[16]

       3. <u>Courts Have Overwhelmingly Rejected Express and Conflict Preemption of Similar State Laws</u>

       Virtually no courts either at the state or federal level have accepted the preemption arguments made by Defendants. In *Scannell v. Verizon Directories Corp., et al.,* King County Superior Court No. 06-2-07169-7SEA, Judge MacInnes agreed the TCPA does not preempt RCW 80.36.400, and denied the Defendant telemarketer's motion for summary judgment dismissal. (Williamson Decl., Exh. 9). The Utah Supreme Court in *Utah Division of Consumer Protection v. Flagship Capital,* 2005 UT 76, 125 P.3d 894 (2005), ruled that Utah's exercise of police power to impose restrictions on interstate call autodialers was not preempted by the TCPA. The court saw "no reason why telemarketing companies would be unable to comply with both the Utah laws and the federal statutes." Utah Code § 13-25a-103(4) avoids conflict with the TCPA: "A person may not make or authorize a telephone solicitation in violation of Title 47 U.S.C. 227." Utah's telemarketing standards are simply stricter:

---

*inter alia,* to comply with all federal, state and local laws regarding telemarketing. (Williamson Decl. Exh. 6, Pgs. 1, 22 and signature page, 33).

[16] *See also* Reply Comments of the National Association of State Utility Consumer Advocates, CG Docket No. 02-278, Dec. 9, 2002 (Williamson Decl. Exh. 7)(telemarketers' exclusive jurisdiction argument incorrectly oversimplifies FCC jurisdiction; FCC "does not have exclusive jurisdiction over the right to live in peace and quiet in the privacy of one's home, which is the real issue in this docket", at 3-4); Comments of the Attorneys General of Arkansas, *et al.* CG Docket No. 02-278, Jan. 13, 2006 (Williamson Decl. Exh. 8) (FCA preserves State regulation and limits preemption only to those areas where the intent to preempt is express").



WILLIAMSON
& WILLIAMS

187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

> [T]he record does not reflect that a national telemarketer would confront any substantial hardship by being required to determine which of its calls reach the telephones of Utah residents. ... The telemarketer can simply identify those calls that would be made to Utah and choose not to make those calls or to conform those calls to the Utah regulations. That the TCPA creates a uniform nationwide minimum set of prohibited telemarketing activities does not mean that Utah's heightened standard for companies wishing to make phone calls to this state conflicts with the federal scheme.

*Flagship Capital,* at 900-01. See also *Hovila v. Tween Brands,* supra. ("Defendant has not demonstrated that compliance with the stricter WAWAD requirements would make it impossible to comply with the TCPA in the circumstances presented here.").

In *State ex rel. Stenehjem v. FreeEats.com, Inc.,* 2006 N.D. 84, 712 N.W. 2d 828, *cert. denied,* 549 U.S. 953 (2006)(discussed *infra*), the North Dakota Supreme Court found a statute virtually identical to Washington's not preempted. *See also Brill v. Brektold Ent. Inc.,* 2006 TCPA Rep.1494 (Ill. Cir. Ct. 2006)(rejecting preemption because in this area of traditional powers, Congress would have to make intent to preempt "clear and manifest"). In *FreeEats.com v. Indiana,* 2006 TCPA Rep. 1593, 2006 WL 3025810 (S.D.Ind. 2006), *rev'd in part, vacated in part on other grounds,* 502 F.3d 590 (7th Cir. 2007), the court disagreed with *Chamber of Commerce v. Lockyer,* 2006 WL 462482 (E.D.Cal. 2006) (upon which Defendants heavily rely, discussed *infra*) to conclude the TCPA did not preempt a state telemarketing law:

> There is a general presumption that Congress did not intend to preempt and displace state laws because "Congress does not cavalierly preempt" state law. .... The court in *Lockyer* found that the presumption did not apply because there had been "a tremendous amount of federal legislation regarding interstate telecommunications." .... This Court respectfully disagrees with *Lockyer's* conclusion because it ignores that the States have for several years attempted to regulate telecommunications that harm state citizens, a fact that Congress acknowledged when it passed the TCPA.

*FreeEats.com v. Indiana,* 2006 WL 3025810, at *6; see also *TSA Stores, Inc. v. Dept. of Agriculture & Consumer Servs.,* 957 So.2d 25, 28-29 (Fla. App. 5 Dist. 2007), cert. denied, 128 S.Ct. 2466 (2008).

In *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.,* 184 S.W.3d 707 (Tex. 2006), the Texas Supreme Court held: "Section 227(e) provides that the TCPA does not preempt state

WILLIAMSON
& WILLIAMS

187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

laws imposing more restrictive requirements or even prohibiting the use of telemarketing equipment." *Id.* at 717.

> First, we note that section 227(e)(1) is specifically titled 'State law *not preempted.*' ....
> Congress's intent to supplement state legislation explains why the preemption concern
> would have focused on more aggressive regulation by the states.... Congress clearly did
> not intend the TCPA to establish a ceiling if states decided to be more aggressive...

*Id.* at 718 (citations omitted)(TCPA does not preempt state laws for calls **disseminated** within the state, wherever they are initiated).

In *Van Bergen v. Minnesota*, 59 F.3d 1541 (8th Cir. 1995), the Eighth Circuit rejected the theory that without federal jurisdiction over interstate telemarketing, the callers will evade state law.

> The congressional findings appended to the TCPA state that "[o]ver half the States now
> have statutes restricting various uses of the telephone for marketing, but telemarketers
> can evade their prohibitions through interstate operation; therefore, Federal law is
> needed to control residential telemarketing practices." ... This finding suggests that the
> **TCPA was intended not to supplant state law but to provide interstitial law**
> **preventing evasion of state law by calling across state lines.**

*Id.* at 1548 (emphasis added).[17]

The Fourth Circuit, in *International Science & Tech Inst. Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1153 (4th Cir. 1997) agreed that in the Savings Clause, "Congress stated that state law is not preempted by the TCPA" (focusing on the word "or" in section 227(e)(1)). The Fourth Circuit and other cases have reached their holdings using the same grammatical construction of the Savings Clause employed by the North Dakota Supreme Court in *Stenehjem,* discussed *infra*.

---

[17] Citing the trial court opinion in *Van Bergen,* Defendants (Motion 9, fn 2) attempt to distinguish that case as dealing with a state statute that provided an exception for established business relationships. Motion, 8. The 11th Circuit unequivocally upheld the state law against preemption; nothing in the opinion limits the *Van Bergen* court's pre-emption holding in any way, certainly not on the basis that the state statute at issue contained an EBR exception.



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

In *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287 (11th Cir. 1998), the Eleventh Circuit adopted the Fourth Circuit's analysis in *International Science*: "the Act specifically held that it did not preempt any state law that imposes more restrictive intrastate requirements or which prohibited certain practices." *Id.* at 1289. The Fifth Circuit agreed, stating that Congress meant the TCPA to supplement, not displace, state law:

> The history and purpose of this statute provide further support for the conclusion that Congress intended to confer exclusive jurisdiction upon the state courts. Congress enacted the TCPA as a supplement to state efforts to regulate telemarketing activities. This nonconsensual telemarketing activity was viewed by Congress as an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services..... Congressional action was needed as states had no independent regulatory power over interstate telemarketing activities. .... By creating a private right of action in state courts, Congress allowed states, in effect, to enforce regulation of interstate telemarketing activity.

*Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 513 (5th Cir. 1997)(citations omitted).

The Third Circuit, rejecting field preemption, confirmed that Congress meant to stop telemarketers from avoiding state regulation by interstate activity:

> [T]he statute does not appear to reflect any significant federal interest, or one that is uniquely federal. It does not reflect an attempt by Congress to occupy this field of interstate communication or to promote national uniformity of regulation. Rather, Congress recognized that state regulation of telemarketing activity was ineffective because it could be avoided by interstate operations.

*ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 515 (3d Cir. 1998).

All five federal Courts of Appeals and every state court to address the issue have come down <u>against</u> express preemption, agreeing Congress intended to enhance state enforcement, not impair it:

> Indeed, from top to bottom, the private TCPA action reflects Congress' intent to enhance state sovereignty. Congress enacted the TCPA to assist states where they lacked jurisdiction; it empowered states themselves to enforce the TCPA in federal court; it authorized private enforcement exclusively in state courts; and it recognized state power to reject Congress' authorization.

WILLIAMSON
& WILLIAMS

187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

1 | *International Science,* 106 F.3d at 1158.[18]

2 | In *Gottlieb v. Carnival Corp.,* 635 F. Supp. 2d 213, 225 (E.D.N.Y. 2009),[19] the court

3 |
4 | held that nothing in the Savings Clause or elsewhere expressly preempts state law regulating

5 | interstate telemarketing:

6 |      [I]t was not Congress's intent to preclude states from supplementing federal regulation
of telemarketing and unsolicited faxes with regulation of their own. Just the opposite is

7 | true. … "The legislative history indicates that Congress intended the TCPA to provide
'interstitial law preventing evasion of state law by calling across state lines.' Congress

8 | thus sought to put the TCPA on the same footing as state law, essentially supplementing
state law where there were perceived jurisdictional gaps." [Citations omitted.] …

9 |      It is of no moment that Congress may have *believed* that, because states lacked

10 | jurisdiction, a federal law was needed to regulate interstate communications. "*This
Court is aware of no reasoned legal analysis supporting the belief expressed in the*

11 | *congressional reports that state laws could not reach such unsolicited, interstate
advertisements.*" 436 F.3d at 343 n. 9. … This Court, too, is unaware of any such

12 | support.

13 |     4. The Sole Decisions Defendants Rely On Are Neither Binding Nor Correct.

14 |     The only conflicting written opinion is from one federal district court, *Lockyer, supra,*

15 | an unpublished and unappealed decision which has never been cited positively. The other

16 | decision on which Defendants rely is *Williams v. MCIMetro Access Trans. Servs. LLC,* No.

17 | C08-82TSZ (W.D.Wash., 2008), an oral, unpublished opinion by Judge Zilly.

18 |

---

19 | [18]*See also Florida v. Sports Authority Florida, Inc.,* U.S. Dist. Ct., M.D. Fla., Case No. 6:04-CV-115-Orl-JGG,

20 | Order (June 4, 2004) at 5-6 ("while the Sports Authority points to the TCPA as preempting state-law unsolicited-sales-call and improper-use-of-pre-recorded-messages claims against it, the TCPA itself expressly disavows any intent to preempt such claims")(emphasis in original); *North Carolina v. Debt Management Found. Serv. Inc.,*

21 | U.S.Dist.Ct., E.D.N.C., No. 5:03-CV-950-FL(3), Order (March 8, 2004) at 16-17 ("the TCPA…explicitly recognizes several areas in which state law is not preempted ("nothing in [the TCPA] shall preempt any State

22 | law…which prohibits…(C) the use of artificial or pre-recorded voice messages[']")(quoting savings clause; emphasis in original); at 17-18 ("the court finds no clear intent on the part of Congress to prevent states from

23 | bringing state law causes of action against interstate telemarketers in state court"). The North Carolina case used the same grammatical construction as the Florida case and reached the same conclusion (copies of orders

24 | attached to Williamson Decl. Exhs.10 and 11.)

25 | [19] Defendants cite (Motion 4) a portion of the 2005 district court opinion in *Gottlieb* taking out of context one comment in the legislative history. That decision was vacated and remanded by the Second Circuit, leading on

26 | remand to the 2009 district court decision discussed here.

---



**WILLIAMSON & WILLIAMS**
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

One of *Lockyer's* greatest flaws was misconstruing the Savings Clause: "The Court's decision in *Lockyer* was premised upon its conclusion that the presumption against preemption does not apply and upon a strained reading of the language of 47 U.S.C. 227(e)(1))." *State ex rel. Stenehjem v. FreeEats.com, Inc.,* 2006 N.D. 84, 712 N.W. 2d 828, 842, *cert. denied,* 549 U.S. 953 (2006). *Lockyer* erroneously framed the issue as one of customary telecommunications regulation rather than consumer protection and privacy, the province of the states. There is a logical explanation for the intra- and interstate distinction: "there may be a substantial difference between the effect of state laws which seek to impose voluminous regulations upon interstate calls and those which wholly prohibit a specific class of interstate calls." *Stenehjem,* at 834. The plain language of the TCPA controls this case:

> The Supreme Court has concluded that "vague notions of the statute's 'basic purpose' are... inadequate to overcome the words of its text regarding the specific issue under consideration." .... It is not a court's function "to find reasons for what Congress has plainly done," but rather the court's job is to "avoid rendering what Congress has plainly done... devoid of reason and fact."…. It is for Congress, not the courts, to amend the statute if plain language of the statute does not accurately reflect the true intent of Congress.... As noted by the Supreme Court in *Carter v. United States,* 530 US 255, 271 (2000)... when construing a statute a court must "begin by examining text, not by 'psychoanalyzing those who enacted it.'"

*Stenehjem,* at 833-34 (citations omitted).

The *Stenehjem* court correctly found that the TCPA Savings Clause unambiguously allows for enforcement of North Dakota's statute:

> The word "or" is disjunctive in nature and ordinarily indicates an alternative between different things or actions.... Thus, read logically and grammatically, the statute states that nothing in the TCPA preempts any state law "that imposes more restrictive intrastate requirements or regulations on" the enumerated classes of calls, and nothing in the TCPA preempts any state law "which prohibits" calls within the enumerated list. "Intrastate" unambiguously modifies only the first clause, not the second. If Congress had intended that the second part of the statute apply only to intrastate calls, "it could simply have said that."… Because the statutory text is unambiguous, our inquiry into its meaning ends there.

*Stenehjem,* at 834 (citations omitted).

WILLIAMSON
& WILLIAMS

187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

The TCPA Savings Clause should be given broad effect. "As noted by the United States Supreme Court, when considering preemption a court must 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Stenehjem,* at 836-37. This was recently confirmed by the U.S. Supreme Court, when it stated there are "two cornerstones of our preemption jurisprudence. First, the purpose of Congress is the ultimate touchstone in every preemption case.... Second, in all preemption cases, and particularly in those in which Congress has legislated ... in a field which the States have traditionally occupied, ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine,* 129 S.Ct. 1187, 1194-95 (2009)(internal quotation marks and citations omitted). *Wyeth* held that federal law does not preempt a state-law tort claim asserting that an FDA-approved label for a drug did not contain an adequate warning: "all evidence of Congress' purposes is ... contrary" to the proposition that "Congress thought state-law suits posed an obstacle to its objectives." *Id.* at 1199-1200.[20]

Defendants' reliance on *Lockyer* is both misleading and misplaced, especially its rejection of the presumption against presumption. Again, in Wyeth:

> "We rely on the presumption because respect for the states as independent sovereigns in our federal system leads us to assume that Congress does not cavalierly preempt state-law causes of action. The presumption thus accounts for the historic presence of state law but does not rely on the absence of federal regulation."
> *Id.* at 1195 n.3 (internal quotation marks and citation omitted).

---

[20] The Supreme Court issued two other major opinions addressing implied conflict preemption, each holding state laws are *not* preempted: *Altria Group, Inc. v. Good,* 129 S.Ct. 538, 543 (2008); *Cuomo v. Clearing House Ass'n, L.L.C.,* 129 S.Ct. 2710, 2717-18, 2721 (2009).



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Congress recognized the value of having states exercise traditional police powers in conjunction with the FCC's provision of minimum protection for states that do not have their own protective statutes, consistent with well-founded principles of federalism and recognizing the states as sovereign entities. The question is whether Congress, invoking the Supremacy Clause and expressing the will of the TCPA, intended to prevent states from exercising police powers. With the sole exception of *Lockyer,* the courts have found no such intent.

In *Williams v. MCIMetro Access Trans. Servs. LLC,* No. C08-82TSZ (W.D.Wash., 2008), the district court (Hon. Thomas S. Zilly) granted defendant's motion to dismiss, making an oral ruling from the bench which was never incorporated in to a written opinion, nor was it published. The *Williams* case differed factually from the case at bar in that Plaintiff Williams received an auto-dialed call from MCIMetro, but the auto-dialer did not play a pre-recorded message. Having been presented with this fact pattern, Judge Zilly did state that the TCPA preempted RCW 80.36.400.[21] As with *Lockyer,* Judge Zilly applied a strained and grammatically incorrect reading of the Savings Clause--a reading rejected by all other courts-- and improperly deferred to an FCC opinion that the Savings Clause was ambiguous.[22] Judge

---

[21] Defendants cite no authority for the proposition that an oral decision from the bench which is never reduced to writing and never published has persuasive value in subsequent cases involving similar issues, let alone precedential value.

[22] In *Wyeth v. Levine,* 129 S.Ct. 1187 (2009), the U.S. Supreme Court noted it had never deferred to a federal agency's conclusion that state law was preempted. In that case, the FDA declared preemption in a preamble to a regulation. The preamble failed to give interested parties notice and an opportunity to comment; was "at odds with what evidence we have of Congress' purposes"; and reversed "the FDA's longstanding position without providing a reasoned explanation, including any discussion of how state law has interfered with the FDA's regulation of drug labeling during decades of coexistence." *Id.* at 1201-02. Here, the FCC's claim that the TCPA savings clause is ambiguous and the agency's beliefs as to the possibility of preemption are similarly entitled to no deference, particularly when the FCC has yet to address the thousands of comments it solicited on the issue. At the same time, other parts of the 2003 Order (*e.g.,* ¶¶ 53, 78, quoted *supra*) completely contradict any hint of preemption.

---



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Zilly rejected the presumption against preemption, and incorrectly stated that the *Lockyer* court had concluded the Savings Clause was ambiguous. This decision was appealed to the Ninth Circuit Court of Appeals which, in an unpublished decision, *Williams v. MCIMetro Access Transmission Services Inc.,* 2010 WL 331475 (9th Cir. 2010) affirmed Judge Zilly's dismissal but made no reference whatsoever to Judge Zilly's statements concerning preemption. Instead, the Court of Appeals affirmed based on its analysis of the language of "RCW 80.36.400(1)(a) which defines an automatic dialing and announcing device as a 'device which automatically dials telephone numbers and plays a recorded message once a connection is made'" *Williams,* 2. The court concluded that, because the auto-dialer that called Ms. Williams did not leave a message for her, the defendant did not violate RCW 80.36.400. Instead of holding that RCW 80.36.400 was preempted, the Court carefully analyzed and applied its language to the fact pattern at hand.

5.   <u>Two Recent Written Decisions from this District Agree There is no Preemption</u>

In *Palmer v. Sprint Nextel Corp.,* 674 F. Supp. 2d 1224 (W.D. Wash. 2009), and *Hovila v. Tween Brands, Inc.,* 2010 WL 143347 (W.D. Wash. April 7, 2010), Judges James L. Robart and Robert S. Lasnik rejected the arguments of similarly situated defendants that the WADAD statute is preempted by the TCPA. Defendants devote but one paragraph to analysis of these two critical decisions, and contend that they were incorrectly decided. In particular, Defendants argue that Judges Robart and Lasnik failed to recognize the importance of facilitating legitimate business communications which are central to the TCPA, and, because the WADAD

OPPOSITION OF PLAINTIFFS TO DEFENDANTS'
MOTION TO DISMISS STATE LAW CLAIMS- 18
(No. 2:09-cv-00915-JCC)

WILLIAMSON & WILLIAMS   187 PARFITT WAY SW SUITE 250 BAINBRIDGE ISLAND, WA 98110 (206) 780-4447 (206) 780-5557 (FAX) www.williamslaw.com

is an obstacle to such communications, it is preempted. Defendants also claim that the two

judges misinterpreted the TCPA's preemption clause.[23]

Unlike Defendants, Judges Robart and Lasnik did carefully review the preemption or

"savings" clause of the TCPA. Thus Judge Robart wrote:

> Having reviewed the statutory language, the case law, and the arguments
> of the parties, and mindful of the presumption against preemption, the court
> joins with those courts that have interpreted § 227(e) as evidencing Congress's
> intent not to preempt state laws that prohibit interstate telemarketing calls that
> use ADADs for purposes of commercial solicitation. The plain language of §
> 227(e) all but mandates this result. In *Stenehjem,* the Supreme Court of North
> Dakota explained as follows:   The word "or" is disjunctive in nature and
> ordinarily indicates an alternative between different things or actions. Terms or
> phrases separated by "or" have separate and independent significance. Coupled
> with the comma preceding "or," which indicates a separate clause, the statutory
> language [of § 227(e) ] clearly creates two distinct *1231 and independent
> phrases. Thus, read logically and grammatically, the statute states that nothing in
> the TCPA preempts any state law "that imposes more restrictive intrastate
> requirements or regulations on" the enumerated classes of calls, and nothing in
> the TCPA preempts any state law "which prohibits" calls within the enumerated
> list. "Intrastate" unambiguously modifies only the first clause, not the second. If
> Congress had intended that the second part of the statute apply only to intrastate
> calls, "it could simply have said that." *Stenehjem,* 712 N.W.2d at 834 (citations
> omitted); *see Dish Network,* 667 F.Supp.2d 952, 963-64; *Carter,* 2006 WL
> 3025810, at *8 n. 8. The court is persuaded that the interpretation of § 227(e)
> articulated in *Stenehjem* is the better reasoned approach, and the court hereby
> adopts this interpretation as its own. In light of the plain language of § 227(e),
> the court is satisfied that Congress did not intend the TCPA to preempt the
> ADAD statute, which "prohibits" the type of conduct enumerated in subclasses
> (B), (C), and (D), on the facts of this case.
> 674 F.Supp.2d 1244, 1230-1231

---

[23] Defendant's reference a motion for 28 USC section 1292(b) certification that has been filed by Tween Brands, Inc. filed because "... this issue is so important and of great debate within the Ninth Circuit's district courts..." (Motion, 10), and observe that judge Lasnik has not yet ruled on that motion. Defendants are correct that Judge Lasnik has not yet ruled, but they are hardly correct that this is a matter of great debate within the Ninth Circuit. The two decisions of Judges Robart and Lasnik clearly establish the law for this circuit, and follow the reasoning and rulings of every other circuit in the country on the issue. Further in his Order of April 27, 2010, Judge Lasnik stated that he is "not inclined to stay this matter simply because defendant seeks certification for an interlocutory appeal." (Williams Dec., Exh. 12)

OPPOSITION OF PLAINTIFFS TO DEFENDANTS'
MOTION TO DISMISS STATE LAW CLAIMS- 19
(No. 2:09-cv-00915-JCC)

WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

Likewise, Judge Lasnik, in *Hovila v Tween Brands, Inc.,* looked closely at the savings clause and opined:

> Defendant argues that the word "intrastate" in the opening paragraph of § 227(e) shows that Congress intended to preempt any state regulations that apply to interstate telecommunications. Because the WADAD prohibits the use of automatic dialing and announcing devices for purposes of commercial solicitation, regardless of whether the call originates within or outside Washington, defendant argues that it is expressly preempted by § 227(e). Courts that have interpreted the TCPA's savings clause have come to different conclusions. A few courts agree with defendant and interpret the savings clause in such a way that the word "intrastate" modifies "requirements," "regulations," and "which prohibits." *See Lockyer,* 2006 WL 462482, at *8; *Charvat v. Teleytics, LLC,* No. 05AP-1259, 2006 WL 2574019, at *10 (Ohio Ct.App. Aug. 31, 2006). A majority of the courts has read the word "intrastate" to modify only "requirements" and "regulations," leaving state laws which prohibit the conduct listed in subsections (A) through (D) intact, regardless of whether they regulate intra- or interstate conduct. *See Palmer v. Sprint Nextel Corp.,* No. C09-1211 JLR, 2009 WL 4730851, at *6 (W.D.Wash. Dec.7, 2009); *U.S. v. Dish Network, LLC,* 667 F.Supp.2d 952, 963-64 (C.D.Ill.2009); *Stenejhem v. Freeeats.com, Inc.,* 712 N.W.2d 828, 834 (N.D. Apr.21, 2006). Some courts have determined, based in part on this split in authority, that the savings clause is ambiguous. *See Williams v. MCIMetro Access Transmission Servs. LLC,* No. C08-0082TSZ (W.D.Wash. Nov. 17, 2008). And at least one court has found that the savings clause does not expressly preempt any state regulation since its avowed purpose is simply to save certain state laws from preemption. *Van Bergen v. State of Minnesota,* 59 F.3d 1541, 1548 (8th Cir.1995).
> 2010 WL 1433417, 7 (W.D. Wash., 2010)

Ironically, Defendants criticize the reasoning of Judges Robart and Lasnik with respect to interpretation of the savings clause, but made no effort themselves to analyze the clause including Congresses critical use of the word "or."[24] Instead, they argue that the Plaintiffs' state law claims are expressly preempted by the TCPA because it only allows states to promulgate more restrictive regulations in connection with *intrastate* telephone calls and

---

[24] (e) Effect on State law (1)State law not preempted...nothing in this section...shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, **OR** which prohibits—(A) the use of automatic telephone dialing systems." (emphasis supplied).

OPPOSITION OF PLAINTIFFS TO DEFENDANTS'
MOTION TO DISMISS STATE LAW CLAIMS- 20
(No. 2:09-cv-00915-JCC)



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

simply ignore the issue entirely.  For all the reasons expressed by Judges Robart and Lasnik,

Defendants' argument must fail.

Defendants also claim that, in the two decisions of this District, there was a failure by

the judges to recognize that the WADAD statute may be an obstacle to the furtherance of a

congressional goal.  Judge Robart specifically addressed this concern:

> The court next asks whether the ADAD statute poses an obstacle to the
> accomplishment of Congress's objectives underlying the TCPA. *Whistler Invs.,*
> 539 F.3d at 1164. "A state law is impliedly preempted where it 'stands as an
> obstacle to the accomplishment and execution of the full purposes and
> objectives of Congress.' " *Laster v. AT & T Mobility LLC,* 584 F.3d 849, 857
> (9th Cir.2009) (quoting *Shroyer v. New Cingular Wireless Servs., Inc.,* 498 F.3d
> 976, 988 (9th Cir.2007)). However, the mere fact of "[t]ension between federal
> and state law is not enough to establish conflict preemption." *Shroyer,* 498 F.3d
> at 988 (quoting *Incalza v. Fendi N. Am., Inc.,* 479 F.3d 1005, 1010 (9th
> Cir.2007)).
> 674 F.Supp at 1230

Having recognized the issue, Judge Robart concluded that the WADAD statute does not

frustrate congressional purpose.  Judge Lasnik also directly reputiated the argument made by

Defendants:

> A state law is impliedly preempted where it stands as an obstacle to the
> accomplishment and execution of the full purposes and objectives of Congress."
> *Laster v. AT & T Mobility LLC,* 584 F.3d 849, 857 (9th Cir.2009) (internal
> quotation marks omitted). To determine whether a state law obstructs a federal
> statute, the Court must first identify the purposes and objectives of the statute.
> *Id.* Defendant argues that "Congress' purpose ... was to retain the established
> business relationship exception." Motion at 11 ( *quoting Lockyer,* 2006 WL
> 462482, at *8). This argument is fallacious. When it enacted the TCPA in 1991,
> Congress made no provisions for existing business relationships. As noted
> above, the primary purpose of the TCPA was to protect telephone consumers
> from nuisance and invasion of privacy by banning most automated or
> prerecorded telephone calls to the home. Congressional Statement of Findings, §
> 2 of Pub.L. 102-243. Although the FCC was granted the flexibility to determine
> whether additional types of automated or prerecorded calls should be permitted,
> the key consideration was whether consumers would consider the calls a
> nuisance or an invasion of their privacy.[FN3] The WADAD's prohibition of

WILLIAMSON
& WILLIAMS

187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.wslawfirm.com

unsolicited commercial calls made with an automated dialing and announcing device in no way impedes the stated purposes of Congress. 2010 WL 1433417, 9

6.   There is No Conflict Preemption

Preemption provisions are narrowly and strictly construed. *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1265 (9th Cir.1998). "[P]reemption is ordinarily not to be implied absent an 'actual conflict.'" *English v. General Elec. Co.,* 496 U.S. 72, 90 (1990). "Ordinarily, state causes of action are not preempted solely because they impose liability over and above that authorized by federal law." *California v. ARC America Corp.,* 490 U.S. 93, 105 (1989)(Scalia, J., dissenting). When "Congress has legislated in a field which the States have traditionally occupied, the Court starts with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth,* 129 S.Ct. at 1194-95 (alterations and internal quotation marks omitted).

The Eighth Circuit rejected conflict preemption between the TCPA and a law virtually indistinguishable from Washington's. "It is clear that the Minnesota statute and the TCPA are designed to promote an identical objective, and that there is nothing in the two statutes that creates a situation in which an individual cannot comply with one statute without violating the other." *Van Bergen,* 59 F.3d at 1548. In *FreeEats.com v. Indiana,* 2006 WL 3025810, at *7, *supra,* the court held, under the plain language of the Savings Clause and legislative history "the TCPA creates a uniform nationwide minimum while permitting the States, who were closer to their citizens and can better grasp whether the exercise of police power is necessary to protect their citizens' needs, to pass more restrictive measures if necessary."

Defendants must demonstrate "a conflict between a particular local provision and the federal scheme that is strong enough to overcome the presumption that state and local regulation of ... matters can constitutionally coexist with federal regulation." *Hillsborough*



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

*County, Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 716, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985); *Barrientos v. 1801-1825 Morton LLC,* 583 F.3d 1197, (9th Cir 2009). The presumption is stronger regarding administrative regulations:

> We are even more reluctant to infer preemption from the comprehensiveness of regulations than from the comprehensiveness of statutes. As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer preemption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence.
>
> *Hillsborough County,* 471 U.S. 707, 717; see also *New York Dept. of Soc. Servs. v. Dublino,* 413 U.S. 405, 415 (1973).[25]

The presumption to the contrary is so weighty and well-established that Congress would have had to express clearly a strong intent, in the legislation or history, to eliminate the type of state-law prohibition in RCW 80.36.400. It did not do so. Defendants could easily refrain from calling Washington consumers, and that conduct would not violate federal law. *See Flagship Capital,* 125 P.3d. at 900-01. The WADAD, protecting all Washington consumers equally, does not stand as an obstacle to Congress's full purposes and objectives--to protect privacy, just like Washington's law. Defendants have presented nothing to overcome the presumption against preemption, or establish conflict premeption.

## IV. CONCLUSION

Defendants have not met their burden of establishing their affirmative defense.  The TCPA does not preempt Washington law. The motion should be denied.

///

///

---

[25] *See also* Comments and Recommendations of the Attorneys General of Alabama, *et al.,* CG Docket 02-278, CG Docket No. 92-90 (December 9, 2002)(pp. 8-12) (Williamson Decl. Exh. 13 ); Comments of The Electronic Privacy Information Center, *et al.,* CG Docket No. 02-278 (Dec. 9, 2002) (pp. 14-16) (Williamson Decl. Exh. 14).



WILLIAMSON & WILLIAMS
187 PARFITT WAY SW
SUITE 250
BAINBRIDGE ISLAND, WA 98110
(206) 780-4447
(206) 780-5557 (FAX)
www.williamslaw.com

1

2      DATED: June 7, 2010

3                            WILLIAMSON & WILLIAMS

4                            By  s/Rob Williamson
                             Rob Williamson, WSBA #11387
5                            Kim Williams, WSBA # 9077
                             187 Parfitt Way SW, #250
6                            Bainbridge Island, WA  98110
                             Telephone: (206) 780-4447; Fax: (206) 780-5557
7                            Email:kim@williamslaw.com; roblin@williamslaw.com
                             Attorneys for Plaintiffs and the Proposed Classes
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

OPPOSITION OF PLAINTIFFS TO DEFENDANTS'
MOTION TO DISMISS STATE LAW CLAIMS- 24
(No. 2:09-cv-00915-JCC)


